The opinion of the Court was delivered by
ÜSTott, J.
The clause of the Act of Assembly, under which the defendant had been convicted, or so much of it as it is necessary to notice, is in the following words : “All and every person and persons who shall inveigle, steal, or carry away any negro, or other slave or slaves; or shall hire, aid, or counsel, any person or persons, to inveigle, steal, or carry away, as aforesaid, any such slave, so as the owner or employer of such slave or slaves, shall be deprived of the use and benefit of such slave or slaves ; or shall aid any. such slave in running away, or departing from his master’s or employer’s service, shall be, and he and they is, and are, hereby declared guilty of felony, &e., and shall suffer death as felons, and be excluded and debarred of the benefit of clergy.” 2 Brev. Dig. 245. P. L. 236.[1] It is manifest, from the words of this Act, that it was the intention of the Legislature to make the stealing of a negro, whether from the master or employer, a capital felony.[2] But whether in the latter case it must be so laid in the indictment, or whether it may not still be laid as taken from the owner, notwithstanding* the qualified property -* which the employer may have in him, is a question which it is not necessary now to decide ; for, in this case, the master had not parted with the possession of the negro. He had, indeed, entered into an agreement with his brother, that he should work wdth him for one year; but he was to work for the benefit of the master. He was to receive the fruits of his .labor, and not a stipulated price for his services. He was therefore, literally in the service and employment of his owner.
2. It is admitted, that the evidence of the prisoner’s guilt was sufficient to authorize a conviction, if he had been indicted for a larceny, at common law; and that the selling of the negro in Charleston, was sufficient evidence of stealing, in that district, to subject him to a trial there, for such Jarcency. 1 Hales P. C. 501. But it is contended, that the offence created by this Act, is in the nature of a compound larceny ; and that the act of stealing and carrying away must be accompanied with inveigling, to consummate the felony; and as the inveigling, if any, was in Williams-Tourgh District, the defendant could only be tried there, and not in Charleston. To get at that conclusion, it is contended, that the word “ or,” in the Act, should be changed into “ and,” so as to make it read “ inveigle, steal, and carry away.” That Courts may take such liberty, is established by precedent; and that they should do it, is perhaps sometimes necessary. But I apprehend, it is never to be allowed, except where it is required by the obvious meaning and policy of the law; and much less ought such •power to be capriciously exercised, where the tendency would be to impair or defeat the operation of a law. The object and policy of the Act <was to give the most ample protection to the most valuable species of personal property, owned in this country; and to effect that object, it became necessary to resort to terms suited to the nature of the property intended to be protected. Negroes, being intelligent creatures, possessing volition, as well as the power of locomotion, capable of being deluded *4.1 *by art and persuasion, as well as of being compelled by fear or force J to leave the service of their owners, the phraseology of the Act was, aptly adapted to the nature of the offence. It made it equally penal, to *371 deprive a person of the services of his negro by whatever means it might be effected.[1] To inveigle, means nothing more or less than to entice, persuade or decoy, by any artful or seductive means. It was intended, therefore, literally, as it is expressed, to embrace all who should either inveigle, steal, or carry away, such property ; and that is the construction which has been uniformly given to the Act, from the earliest recollection of the oldest member of this bench. Any other construction would render it utterly inoperative. It would only require the concert of two persons, one to persuade a negro to run away, and the other to receive him in another district, and then sell or convey him away, to elude entirely the penalty of the law; for, as neither had committed the several acts of inveigling, stealing, and carrying away, neither would have committed the crime intended to be punished. Such a construction would make stealing a negro less offence than to aid him in running away, or departing from the service of his master; a distinction not to be found in the Act, and therefore not to be supposed to exist.
Again, it is contended, that there must have been an actual loss of service to complete the offence; and as the stealing was committed in Charleston District, the negro must have absconded and left the service of his owner before he came into the possession of the prisoner.
But personal property is always considered constructively in the possession of the owner, unless he has voluntarily parted with it. And whenever one man disposes of the property of another, against his will, ’ and when he has a right to its services, the law implies a loss of service. Whether it be on Sunday, when every slave is exempt from labor, or on a holiday, when his labor is voluntarily dispensed with by the owner, or in the night, when he does not require his services, or when he has run away, and he cannot ^command them, is perfectly immaterial, Were it otherwise, there would be no settled law on the subject. L Every case would present a complicated question of facts for the consideration of a jury, accompanied with so many qualifications, exceptions, and distinctions, as would render the Act almost a dead letter. All these questions, however, have already been so long and so often settled, that it requires nothing, but that the decisions of our Courts should be published, to preclude all arguments upon them.
3. The last ground may be considered as settled by the verdict; for, although, the presiding judge recommended to the jury not to find the prisoner guilty of petit larceny, on account of the doubt which he entertained on the subject, yet, it was distinctly stated to them, that they might find the property of less value than twelve pence, and then the Court might determine what judgment should be rendered upon that verdict; which would give the defendant the full benefit of the privilege which he claimed. But they thought proper to find a general verdict, which put an end to the question. I am, however, authorized by my brethren to state, that it is the opinion of a majority of the Court, that if the jury had found such special verdict, judgment of death must have been rendered. The Act declares, that any person ivho shall be convicted of stealing a slave, shall be adjudged guilty of felony, and suffer death, without benefit of clergy; and as the penalty is annexed to the specific offence, the value of the *372 property is immaterial. Perhaps it is questionable, whether it is necessary to lay the property to be of any value,[1] and, as has been remarked by one of nay brethren, the Legislature may make the stealing of a pin a capital felony. The opinion of the Court is, that the motion must be refused.
Bay, Colcook and Johnson, JJ., concurred.

 7 Stat. 426, § 1.

 5 Rich. 473; 3 Rich. 174, 95, 70; 2 Bail. 70.

 Post. 177.

 State v. Gossett, 9 Rich. 432.