## MURRAY vs. THE STATE.

1. On the trial of an indictment, framed in conformity with the provisions of the 18th section of the 4th chapter of the Penal Code, it is competent to prove that the property described was stolen by the accused in another State and brought by him into this.
2. A runaway slave may be the subject of a larceny.
3. It is the bringing of the stolen property into this State, and not the taking of it, which constitutes the offence denounced by the 25th section of the 4th chapter of the Penal Code. Where, therefore, the taking is under such circumstances, as would make it a larceny, if done here, and the property is afterwards brought into this State, the crime is complete, without regard to the law of the State, where the act was committed.
4. A charge predicated on a state of facts, which the evidence does not tend to establish, is abstract, and should be refused, although it may assert a correct legal proposition.

ERROR to the Circuit Court of Montgomery. Tried before the Hon. Rob't Dougherty.

THE indictment in this case was as follows: The grand jurors, &c., "upon their oaths present that Lovick P. Murray, late of said county, on the sixth day of June in the year of our Lord eighteen hundred forty-nine, in the county aforesaid, two certain slaves, to-wit, John and Alfred, the property of Jacob Inabinet, then and there being found, unlawfully and feloniously, then and there did inveigle, steal, carry and entice away, with a view then and there to convert the said slaves to the use of him, the said Lovick P. Murray," &c.

THOS. WILLIAMS, for the plaintiff in error.

The ATT'Y GEN'L and WATTS, for the State.

DARGAN, C. J.—The indictment in this case is framed under the 18th section of the 4th chapter of the Penal Code, which provides that "every one who shall inveigle, steal, carry or entice away any slave, with the view to convert such slave to his own use, or the use of any other person, or to enable such slave to reach some other State or country, where such slave may enjoy freedom, such person shall, on conviction, be punished by confinement in the penitentiary, not less than ten years." Clay's Dig. 419. The testimony tended to prove that the

slaves were stolen in the State of Louisiana from Jacob Inabinet, and brought by the prisoner into this State, and having them in his possession in Montgomery county, he was arrested. To this testimony the prisoner, by his counsel, objected, because, being indicted in the same manner as if the slaves had been stolen in the county of Montgomery, evidence tending to prove the larceny in Louisiana, and the bringing of the slaves into Alabama, did not support the charge as laid in the indictment. This objection was overruled by the court, and the prisoner excepted.

The 25th section of the 4th chapter of the Penal Code provides as follows: "Every person, who shall fraudulently or feloniously steal the property of another in any other State or country, and shall bring the same within this State, may be convicted and punished in the same manner, as if such larceny had been committed in this State; and in every such case, such larceny may be charged to have been committed in any county, in or through which such stolen property may have been brought." Clay's Dig., 420. It is manifest that the evidence proves an offence against the 25th section of the 4th chapter of the Penal Code, and not against the 18th, under which the indictment is framed; yet we are constrained to hold, that it was admissible. In the case of Williams v. The State, 15 Ala. 259, the indictment charged the prisoner with the larceny of a slave, according to the precedents of the common law; the evidence tended to show that the slave was stolen in Tennessee and brought into this State; and upon this evidence he was convicted and the sentence prescribed by the 18th section of the 4th chapter of the Penal Code was pronounced against him. This court reversed the judgment, holding that the punishment prescribed by this section of the Code could only be pronounced, when the indictment was framed upon it. But whether any punishment could be imposed, when the indictment is framed, as at the common law, was not decided in that case. It was said, however, that the proof did not sustain the indictment. In the subsequent case of Ham v. The State, 17 Ala. 188, the indictment was a common law indictment, charging the felonious taking to have been committed in the county of Perry, but the evidence showed that the slave was stolen in Mississippi and brought into this State; the conviction was held to be erro-

neous. These decisions settle this, that if the offence is charged as a larceny at common law, a conviction cannot be had upon proof of stealing a slave in another State and bringing him into this. Still we are bound, unless we declare the 25th section a nullity, or refuse to punish offences committed in violation of its provisions, to inflict the same punishment upon the thief, who brings the stolen property into the State, that we would, if the slave was originally stolen within our jurisdiction. How can this be done? There can be but one answer given to the quere, that is, to indict under the section of the Statute that declares the penalty; for if he is to suffer the punishment prescribed by this act, he must be indicted under it. This is the conclusion we attained in the case of Williams v. The State, *supra*,—and thus the legal anomaly is introduced of charging one with a violation of one section of the Statute, and proving his guilt, by showing that he has violated another. The court, however, is not responsible for such apparent inconsistency. It is the result of our Statute law, which we must enforce, for if we do not punish those, who steal slaves in another State and bring them into this, under the 18th section of the 4th chapter of the Penal Code, we cannot punish them at all, and thus the 25th section would be rendered nugatory, so far as relates to the offence, which the evidence shows the prisoner to have committed. For if he is indicted according to the common law, he cannot be convicted of any offence, and if not indicted under the 18th section of the 4th chapter of the Penal Code, he cannot receive the punishment denounced by this section of the act. It may, however, be argued that the indictment might be framed under the 25th section, and the prisoner convicted of grand larceny, and receive the same punishment that would be awarded upon the conviction of this offence. The answer to this argument must be that the prisoner then would not suffer the same punishment as he would, if the original larceny had been committed in this State, and if it had been, he could only be indicted under the 18th section, and could be punished only by, or *in accordance with its provisions*. He therefore must be punished, as he would have been, had the original larceny been committed in Alabama, and to do this, he must be indicted under the 18th section.

I have said that one cannot be convicted of the larceny of a

48

slave in this State upon an indictment framed as at the common law. The two decisions of this court, to which I have refered, force me to this result. The reasons, however, in support of this position, I think it difficult to answer. I will not say that slavery could not exist according to the rules of the common law. I will only say that it did not. Therefore there was no such offence known to the common law *as stealing a slave.* The introduction of slavery created a new species of property, and when the Legislature passed laws for its protection, and prescribed the penalties against those who might injure or steal it, they who violate the Statutes can only be punished according to the Statutes. I will not say that the common law would be wholly inadequate to afford protection to such property, in the absence of Statute regulations; that question is not before us. All I intend to say is this, that when a Statute creates an offence in reference to injuries done to this species of property and prescribes the punishment, one who violates this act must be indicted under it and receive the punishment denounced by it, and cannot be indicted and punished *in any other* manner. Let us apply this argument to the case before us. The offence, which the record shows the prisoner to have committed, is created by the 25th section of the act we have refered to; the latter clause of this section declares that he may be indicted in the same manner, as if the larceny was committed in Alabama; the prisoner, therefore, can be indicted in no other mode, and this mode is to indict under the 18th section, as if the original larceny had been committed in this State. In conclusion, however, upon this subject, it would have been sufficient to have said, that however repugnant this reasoning and conclusion may be to our commonly received notions of the common law, the Statute laws of the State, and the decisions *heretofore* made in reference to them, require us to hold that there was no error in the admission of this testimony.

2. The next question we propose to examine is, whether a runaway slave is the subject of larceny. Independent of any decisions upon the subject, I should not entertain a doubt but that larceny may be committed in stealing a runaway slave. If property be found in the high-way, and the finder knows the owner, but instead of restoring it to the owner, he converts it to his own use, such conversion amounts to a felony.—2 Russ.

on Crimes, 102-3; Whar. Am. Crim. Law, 400.    But the very
point has been decided by several of our sister States.    In the
case of The State v. Davis, 2 Carolina L. Repos., 271, the
Supreme Court of North-Carolina held that a runaway slave
was the subject of larceny; and in the case of The State v. Mills,
2 Nott & McC., 1, the Court of Appeals of South-Carolina
held the same doctrine.    In the case of Randall v. The State,
4 S. & M., the Court of Errors of Mississippi recognised the
same principle; and, in the opinion, a runaway slave is likened
to any other lost goods, the finding and conversion of which by
another, if the finder know the owner, is a larceny, but no
larceny, if the owner is unknown.    The case of The Com-
monwealth v. Hays, 2 Virg. Cases, 122, may have been well
decided, as the decision turned upon a statute of Virginia, but
if it was intended to assert that a runaway slave was not the
subject of larceny upon the general principles of law relative
to the stealing of lost goods, we should not hesitate to deny its
authority.

3. The next inquiry is, whether it was necessary to introduce
the laws of Louisiana, to show that the taking would have con-
stituted a larceny in that State.    It is manifest that it is not the
crime committed in Louisiana, that our Statute intended to
punish; neither our courts, nor our Legislature have power
beyond the limits of our State; we can neither define, nor pun-
ish crimes committed against the laws of another country ; but
we can define and punish crimes committed here.    It is not,
therefore, the larceny committed in Louisiana that constitutes
the offence, but it is the bringing of the stolen property into this
State.    We have the right to forbid this, and may punish for
the violation of our law commanding that it shall not be done.
Seay v. The State, 3 Stew. 123.    Whether, therefore, the felo-
nious taking of the property of another in the State of Louisi-
ana be criminally punished in that State or not, is immaterial;
but the inquiry here is, whether the property was taken in Lou-
isiana under such circumstances, as would constitute larceny in
this State, if the act was committed here.    If the taking in Lou-
isiana would amount to larceny according to our laws, and the
property be brought feloniously into this State, the crime is
complete, without regard to the laws of Louisiana.

4. The last question, we deem it necessary to notice, is this :

The prisoner's counsel requested the court to charge the jury, that if they doubted whether the prisoner first took possession of the slaves as runaways, and afterwards concluded to convert them and did so, and brought them into Alabama, then they must acquit the prisoner. I admit the law to be, that if one come into possession of property, without a felonious intent at the time the possession is acquired, and afterwards conceives the fraudulent design of converting it to his own use, this is no felony.—Rex v. Mucklow, 2 Eng. Crown Ca., 160; 2 East's Pleas of the Crown, 662-3; Wharton's Am. Crim. Law, 395. Under this principle, I should hold, that if the prisoner took up the slaves honestly as runaways, and afterwards conceived the fraudulent design of converting them, he could not be guilty of a felony under our laws. But to warrant a request for special instructions, or rather to authorise a reversal of a judgment because such instructions are not given, there must be some evidence, *either directly to the point*, or growing out of the circumstances of the case, to call for such instructions. The weight or conclusiveness of the evidence is not the question, but it must in some degree tend to prove the facts, upon which the instructions asked for are *based*, and if there be no such evidence, the charge may be refused by the court as abstract, and such refusal will not be error, although in point of law the instructions prayed for are correct. This is a rule applicable to all cases; for the court should in no case be required to give charges *in reference* to a state of facts, that the evidence does not in some degree tend to prove. Applying this view to the instructions prayed, we think it clear that there was no error in refusing to give the charge requested; for neither the testimony, nor the circumstances of the case, afford the slightest evidence that the prisoner took possession of the slaves with any other than a fraudulent intent to convert them to his own use. It is also probable, that the charge might have been refused on the ground that it was calculated to mislead the jury. It is, that if the jury believe that the prisoner first took possession of the slaves as runaways, and afterwards concluded to convert them and bring them to Alabama—had this charge been given, the jury might have supposed it immaterial to inquire into the *quo animo* with which the prisoner first took possession of the slaves, if they found that after he had them in possession, he then, for

the first time, made manifest his intent to convert them to his own use. But as it is clear that the charge might have been refused for the reason first stated, it is unnecessary to say whether it could have been refused *for the latter*.

After the best examination of all the questions growing out of the case, we feel constrained to hold that there is no error in the record, and the judgment must be affirmed. It is, however, due to myself to say, that but for the previous decisions of this court, construing the Statutes under which the prisoner was convicted, my own reasoning would have led to a different result; but not being able to say, without doubt, that those decisions are incorrect, I yield to them as authority and unite in affirming the judgment.

CHILTON, J.—I concur in affirming this judgment, but do not agree with the Chief Justice altogether in his reasoning. I think the decisions of this court, which he reluctantly follows, give to the Statute a very correct construction, as may be easily shown. The two sections of the Statute which he has quoted, taken together, merely make the stealing of the slaves in Louisiana, and bringing them into Montgomery county by the thief, a stealing of them in Montgomery, and, so far from presenting the legal anomaly he supposes, furnish a striking analogy to the ordinary case of indicting the thief in one county, into which he brings property which he has stolen in another. In that case, the asportation into the county of the venue constitutes the felony in that county, as by these sections the asportation into the county of Montgomery, though the property was stolen in another State by the prisoner, constitutes the larceny in Montgomery.

This State certainly has no right to punish for breaches of the criminal law of another State; but it has the right to say, if thieves from other States bring the stolen property here, they shall be deemed guilty of stealing it here, and shall be "convicted and punished" as if they had stolen it here. "In the same manner," says the act—that is, the indictment is the same, and the venue may be laid in any county through which he has conveyed the stolen property. The prisoner is presumed to know the law which makes this larceny, and when charged with stealing in this State, he has but to apply the facts to the

law to be fully advised of the "nature and cause of the accusation against him." And this is an answer to the objection to the indictment, urged upon constitutional grounds. Neither is he *indicted* for violating one Statute, and *punished* for the violation of another; but he is indicted and punished for committing the offence denounced by the 18th section of the Penal Code, according as the constituents of that offence, in the given case, are prescribed by the 25th section of that Code; and I confess that I am unable to perceive any thing incongruous in this.

The plain meaning of the two sections is, that if a person steal property in another State or country and bring it here, his bringing it here makes him guilty of stealing it here; and he may be convicted and punished precisely as if he had stolen it here; and thus the Statute relieves the State from the necessity of describing accurately the manner in which the offence was committed.