SPENCER *vs.* THE STATE.

1. A declaration, of a character proper for a slave to make, made by him in the presence and hearing of a white person from whom it naturally called for a response, is admissible evidence against such white person, if uncontradicted by him, as showing acquiescence in the truth of the statement.

2. The eighteenth section of the fourth chapter of the Penal Code, (Clay's Digest, 419, § 18,) has not an extra-territorial operation.

3. The terms "steal" and "larceny," as used in the twenty-fifth section of the fourth chapter of the Penal Code, (Clay's Digest, 420, § 25,) are technical, and do not include an offence which would not amount to a larceny if committed in this State.

ERROR to the Circuit Court of Macon.

Tried before the Hon. E. Pickens.

The plaintiff in error was indicted for "inveigling, stealing, carrying and enticing away a slave, with a view to convert such slave to his own use," &c. On the trial, the State offered to prove the confessions and declarations of the slave, made the day after the prisoner's arrest, and in his presence and hearing, and after the slave had been taken aside by some of the company present, and privately conversed with. These declarations were offered in connection with other evidence, showing that on the declarations being made, some person present asked the prisoner if he did not intend to whip the slave for making them, to which he replied that "he did." The evidence was objected to by the prisoner, but was admitted by the court. The State also offered to prove other declarations made by the slave in the presence and hearing of the prisoner, after an investigation had been had before a magistrate, and while the prisoner was being conveyed to jail in the custody of the sheriff, which declarations were not contradicted by the prisoner. These declarations were also admitted against the objection of the prisoner. There was also evidence tending to show that the slave had run away from his overseer when about to be whipped by him, in the State of Georgia.

The court charged the jury, "that a runaway slave, either in this State, which slave was run away from a foreign State

and found in this, or found in a foreign State, and belonging to a non-resident, was the subject of the statutory offence of inveigling, stealing, &c., and that under either of the above state of facts, the prisoner could be considered under the indictment." The admission of the declarations of the slave, and the charge of the court, are now assigned for error.

GUNN, for plaintiff in error:

1. Declarations and conversations in presence and hearing of a party, when uncontradicted by him, before they can be received as evidence against him, must be made by such persons and under such circumstances as naturally to call for a contradiction. 1 Greenleaf, § 199; 1 Lit. Sel., Cas. 145; Commonwealth v. Kennedy, 12 Met., 235. Such declarations may often be impertinent, and best rebuked by silence. Child v. Grace, 2 C. & P., 193.

2. Declarations coming from a slave do not come from such a source as to call for a contradiction or reply. Groning v. Devana, 2 Bailey, 192; 1 M'Cord, 430; Fox v. Lambson, 3 Hals., 275; Brown v. Lester, Geo. Dec., part 1, 77; 2 vol. Phillips Evidence, p. 59, note 46, and cases there cited.

3. The court erred in charging the jury that a slave in a foreign State was the subject of the statutory offence of inveigling, stealing, &c., as the 25th § Clay's Dig., 420, only uses the words *steal* and *larceny*. The indictment was found under the provisions of the 25th, and not the 18th section. The proper charge, therefore, for the court to give was, that to make out an offence under the 25th section, the slave should have been taken under such circumstances as would have been a *larceny at common law*. Hawkins v. The State, 8 Porter, 461; and Wisdom's case, Ib., 511; Mooney v. The State, 8 A. R., 328; Murry v. The State, 18 A. R., 727.

M. A. BALDWIN, Attorney General, for the State:

1. Where declarations are made in the presence of a party, which jeopardize his interest or reputation, and not denied by him, it is an admission of the truth of such declarations by the party whose interest or reputation is affected by them. The true rule, in such cases, seems to be that evidence of this

2

character is admissible, whenever *the occasion and the attendant circumstances* call for serious admission or denial on his part. Vail v. Strong, 10 Verm., 463; Mattocks v. Lyman, 16 Ib., 119; Wheat v. Croom, 7 A. R., 349.

2. In the case at bar, the prisoner was asked if he did not intend to whip the slave for making these statements in his presence, and he replied that he would whip the slave. This will let in the declaration of the slave, for if the party in whose presence, and against whom, the declarations are made, make any answer or reply whatever, the whole conversation in which the declarations are made must be submitted to the jury. Mattock v. Lyman et al., Supra.; Wheat v. Croom, Supra.

3. It is no objection to the admission of these declarations that the declarant was a slave. The reason for their admission is not upon the ground that the party making them could be a competent witness, but they are received upon the ground that they are "verbal acts" connected with the transaction, and calculated to elucidate its character. Rex v. Bartlett, 7 Car. & Payne, 832; Rex v. Smithers, 5 Ib., 332; The State v. Chittem, 2 Dev., 49; Yeatman & Armstead v. Hart, 6 Humph., 375.

4. The charge of the court is in accordance with the recent decisions of this court. The State v. Williams, 15 A. R., 259; The State v. Murray, 18 Ib., 727.

5. The bill of exceptions does not disclose what these declarations were which the slave made in presence of prisoner, and as such, it does not appear that the prisoner was prejudiced by their admission.

6. The cases in 5th and 7th Car. & Payne, Supra., 332 and 832, show that the parties against whom the declarations were made, were both under arrest. Roscoe, Cri. Ev., top p, 46.

GOLDTHWAITE, J.—The first question presented by the record arises upon the admissibility of the declarations of the slave, made in the presence and hearing of the prisoner. The record does not inform us of the character of the declarations, and assuming for the present that they were not denied by the prisoner, and that his situation at the time was not such as to render it improper for him to make such denial, the

question which the court is called upon to determine is, simply whether the admission of a white man to the truth of any statement made by a slave, in his presence and hearing, can be inferred from his silence. The rule in relation to evidence of this character, so far as we are able to deduce it from adjudged cases and the best elementary writers, is, that the statement must be heard and understood by the party affected by it; that the truth of the facts embraced in it must be within his knowledge, and that the statement must be made under such circumstances and by such persons as naturally to call for a reply. 1 M. & M., 306; 14 S. & R., 393; Child v. Grace, 2 C. & P., 193; Hayslep v. Gymer, 1 Ad. & El., 162, 165; Batturs v. Sellers, 5 Har. & J., 117, 119; Cow. & Hill's notes to Phil. Ev. Part 1, 191 to 199; 1 Green. Ev., § 199; Com. v. Kinney, 12 Met., 235.

To reject the evidence in the case under consideration, solely on the ground that the party making the declaration was a slave, would be in effect to decide that, under no conceivable circumstances, could a statement made by a slave call for a response from a white man; a proposition in direct opposition to our daily observation and experience,

That the declaration was made by a person whose condition rendered him incompetent as a witness, does not in the slightest degree affect the principle on which evidence of this character rests. If the declaration was made by a slave, and the party affected by it had made by his reply a direct admission of its truth, there could be no doubt of the admissibility of the statement and reply; and in cases of implied admissions, the admission, instead of being made by language, is made by the silence of the party. The circumstances under which the declarations were made, the fact that the slave, before making them, had been taken aside and privately talked to by some of the company, cannot, in our opinion, in the slightest degree affect the question of the admissibility of the evidence, although it might properly have the effect of impairing its force with the jury. In relation to the reply in the affirmative, made by the prisoner to the question asked by some one present, if he did not intend to chastise the slave for making the declarations, we do not think it amounted to a denial of the statement made, and could therefore have no

bearing upon the question of the admissibility of the evidence. Neither does the fact, that the declarations were made while the party affected by them was under arrest, affect their admissibility. Evidence of the implied admissions of parties while in the custody of officers, under circumstances similar to the present case, has been received by the English courts, Rex v. Smithers, 5 C. & P., 332; and no case has been cited by counsel, and we have been able to find none, in which evidence of this character has been rejected on this ground alone, without the intervention of some other circumstances operating on the mind of the prisoner by fear, by doubts of his rights, or by inducing the belief that his security would be best promoted by silence. No circumstance sufficient to raise this presumption appeared in the case under consideration, and it follows that there was no error shown by the record in the admission of the testimony objected to.

The language of the charge, as stated in the bill of exceptions, renders it difficult to ascertain with accuracy the precise idea intended to be conveyed to the jury. The evidence, however, which is stated in connection with it, and upon which we must presume it was predicated, tended to prove that the slave had run away in the State of Georgia, and the charge in substance was, that a slave in another State, and belonging to a non-resident, could be the subject of the statutory offence declared by the eighteenth section of chapter 4 of the Penal Code, Clay's Dig., 419. In our view, the charge would seem to give to that section an extra-territorial operation, and in that aspect it was clearly erroneous.

And if the court intended to instruct the jury that the prisoner, by bringing into this State a slave taken by him in another State under *any* of the circumstances which would have been a violation of the section of the Penal Code before referred to had the taking been in this State, could be convicted on the indictment against him, we think the charge was also erroneous. The twenty-fifth section of the Penal Code, chapter 4, Clay's Dig., 420, provides " that every person, who shall fraudulently or feloniously steal the property of another in any other State or country, and shall bring the same within this State, may be convicted and punished in every such case as if such larceny had been committed in this State; and

in every such case, such larceny may be charged to have been committed in any county in or through which such stolen property may have been brought," and the previous decisions of this court, based upon the two sections, the eighteenth and twenty-fifth, taken in connection with each other, have established the rule that for a violation of the last section, in relation to a slave stolen in another State and brought into this, that the indictment must be framed on the eighteenth section.  William v. The State, 15 Ala., 259; Ham v. The State, 17 Ala., 188; Murray v. The State, 18 Ala. Rep., 727.

It is unnecessary to review the correctness of these decisions upon this point, as we all agree, that whatever may be the form of the indictment required to reach offences under the twenty-fifth section, it can make no difference in the facts necessary to be proved to establish the guilt of the accused under that section.  Applying the legal rules of construction to the section last referred to, we entertain no doubt that the words " steal " and " larceny " are there technically used, and that one of the essential ingredients of the offence intended to be created by that section, was the taking of the property in another State, under such circumstances as would constitute larceny in this.  Murray v. The State, 18 Ala., 727.

The eighteenth section, however, while it embraces the stealing of slaves within the meaning in which the words " steal " and " larceny " are used in the twenty-fifth section, also embraces other offences, of the same character it is true, and visited upon conviction with the same punishment, but which differ from that offence, considering it as a technical stealing, in some essential particulars.  Thus, to carry or entice away a slave in this State, with the view to enable such slave to reach a State or country where he might enjoy his freedom, would be a violation of the eighteenth section; but if the same act with the same intent was committed in another State, and the slave brought into this, it could not, under the view we have taken, be held as a violation of the twenty-fifth section.  As the instructions, in the view in which we have last considered them, may have induced the jury to believe that the term stealing, as used in the twenty-fifth section of the Penal Code, covered all the acts embraced by the eighteenth section, and thus tended to mislead them, it follows that the judgment must be

*reversed, and the cause remanded;* and the clerk of this court will issue a *mandate* to the sheriff of Macon county, reciting the judgment of this court, and directing him to demand the prisoner of the warden of the penitentiary, and requiring the warden to deliver the prisoner to such sheriff, upon being furnished with a copy of said mandate and a receipt endorsed thereon acknowledging such delivery, and commanding such sheriff to transfer the prisoner to the jail of his county for safe keeping, until discharged by law.