# REPORTS

OF

# CASES ARGUED AND DETERMINED

At June Term, 1857.

————— ⊷⊙⊷ —————

```
30  503
134 164
```

## SCOTT vs. THE STATE.

[INDICTMENT FOR GRAND LARCENY.]

1. *Admissibility of declarations by prisoner after arrest.*—A conversation between the prisoner and his accomplice, during their preliminary examination before the committing magistrate, in which the latter threatened to kill the prisoner if he made any disclosures, and the prisoner replied that he would not disclose anything, is admissible evidence against the prisoner; and a subsequent conversation between them, while confined in the same room together, in which each accused the other of having caused their situation, is also admissible.

2. *Erroneous admission of evidence cured by subsequent proof.*—The erroneous admission of evidence, which is at the time inadmissible, is cured by the subsequent introduction of evidence which renders it admissible.

3. *Evidence of acts by accomplice.*—Evidence having been introduced by the prosecution, tending to show a conspiracy between the prisoner and his accomplice, not only to steal the prosecutor's watch, but afterwards to meet at another place, as soon as convenient, and there divide the profits; the fact that his accomplice, having stolen the watch, afterwards paid double toll at a bridge on the direct road to the place at which they were to meet, is admissible evidence, against the prisoner, when on trial for the larceny of the watch.

APPEAL from the Circuit Court of Bibb.
Tried before the Hon. E. W. PETTUS.

THE prisoner in this case, Henry A. Scott, together with one Jesse West, *alias* Anson Weston, was indicted for the larceny of a watch, the personal property of David Scott, of the value of $150; and was tried at the May term of said court, 1857, when he reserved several exceptions to the rulings of the court, which are thus stated in the bill of exceptions:

"On the trial of this case, the evidence tended to show that, on the 13th February last, the prisoner and one Jesse M. West were traveling on foot through said county, and stopped at Scottville in said county, about dark, at a tavern kept by one Samuel. They had no baggage. They ate supper, and went to bed, sleeping together. The tavern was a frame building, with a passage through the centre, and a piazza in front. There was a large room, on the left of a person entering the passage from the *rent* (?) which was occupied as a bed-room by the prosecutor. When Scott and West arrived, they went into the room, and sat until their supper was prepared; and returned to said room after supper, and sat at the fire until they retired for the night. The prosecutor, on going to bed, hung up his watch on a nail near one of the front windows. Scott and West came again into the room the next morning, and sat there until they were invited to breakfast; when they, with the prosecutor and Mr. Samuel, went into another room to their meal. Scott, West and Samuel went out from the breakfast room together, leaving the prosecutor at the table, and returned to the prosecutor's room. Scott and West then inquired if there was a livery stable in the town, and were told that there was. They then said, that they lived in the same house in Philadelphia, and were traveling, as agents of that house, to electioneer for business for it; that they wished to obtain horses to go to Jonesboro; that their trunks would come on the stage in a day or two, and would be left at that tavern; that they left the Memphis and Charleston railroad, (at what time the witness could not remember,)

and traveled down through Aberdeen and Columbus, Mississippi, and through Tuskaloosa in this State. They then walked out together, towards the stable, and were seen standing alone, near the stable, apparently in conversation. Before going to the stable, West paid the tavern bill of himself and Scott, amounting to one dollar. They returned from the stable together, and met Mr. Samuel in front of the tavern; and proposed to hire horses from him, as they could get none from the stable. Mr. Samuel told them, that he had no horses, but would try to hire horses for them from one of his neighbors; and then went off. The prosecutor was at that time standing in the piazza; and the defendant and West walked past him together into his room. In a few moments, they came out together, and West asked him the way to the privy. The prosecutor pointed out the way, through the passage, into the garden in the rear of the building; and West went out that way. Scott returned into the prosecutor's room; and the prosecutor also walked into his room a few moments afterwards, to get his watch, and looked on the nail where he had hung it the night before, but it was gone. The prosecutor then drew aside the curtain of the window, and looked on the sill; then went to a table, and turned over some newspapers; then to the mantel-piece, and looked behind a map; and then walked quietly out into the piazza. Immediately after this, Scott came to where he was standing, and asked him, in a low tone of voice, 'Have you lost anything?' Prosecutor replied, that he had lost his watch. Scott then walked off, looked in the direction of the privy, returned into the prosecutor's room, and sat down. The prosecutor then walked into the room, when Scott came up to him, and said, 'If you wont do anything about it, if that man has taken anything, I will restore it.' The prosecutor then told Scott, that he could not leave, and sent several persons in search of West. He then had a further conversation with Scott, in which the latter said, that West was a stranger to him; that he never saw West until about ten days before that time, when he met him on the railroad east of Memphis; that he loaned West about $80 on the

33

cars. Scott also offered to pay one half of a reward to be offered for the apprehension of West, and one half of the expenses of sending to Randolph to arrest him. Scott said, also, in the same conversation, that he was living with some merchants in Philadelphia, and was traveling in the south to electioneer for business for his employers. He was asked, if he had any letters, and had called on any merchants in Aberdeen, Columbus, or Tuskaloosa; and replied, that he had not, and that he had no letters. He was placed in custody by the prosecutor, and was sent to jail on the evening of the same day, by order of a justice of the peace, on the charge of larceny.

"West was arrested, on the evening of the same day, on the toll-bridge at Centreville in said county, which is about nine miles from Scottville, and on the direct road from Scottville to Randolph. At the time of his arrest, he had the prosecutor's watch in his possession, and delivered it up without being searched. Just before his arrest, as the witness stated, West paid double toll, and said to the keeper of the bridge, 'There will be another man along presently.' Defendant moved the court to exclude what was said by West at that time, because he was not then present; and, also, to exclude from the jury the fact that West paid double toll. The court excluded the said declaration of West, but refused to exclude the other evidence; and defendant excepted.

"West was carried before a magistrate on the evening of his arrest, and defendant was afterwards, during the trial of West, carried before the same magistrate. Defendant and West walked apart from the court, into one corner of the room, and West said to defendant, (as the witnesses, who followed them, testified,) 'I wanted to tell you, that if you ever make any disclosures, I will kill you, and if any of the others make any disclosures, I will kill them whenever I get out of the penitentiary;' and defendant answered, that he would not disclose. The defendant objected to this conversation, and moved the court to exclude it from the jury; but the court overruled the objection, and defendant excepted.

"West and the defendant were committed to jail, and

were confined in the same room. A witness stated, that he was at work in the jail while they were thus confined, and heard loud words between them; that he at first could not understand what they said, but when he went under the room where they were confined, (the loud talking continuing in the meantime,) he heard West say to defendant, 'If you had not been a d—d fool, I would not have been in this scrape;' to which defendant replied, 'If you had not been a d—d fool, neither of us would have been in it.' The defendant objected to the introduction of this conversation, and moved the court to exclude the same from the jury; but the court refused the motion, and the defendant excepted.

"All the above evidence, to which the defendant objected, was brought out by the prosecution."

I. W. GARROTT, for the prisoner.—1. The payment of double toll by West, when Scott was not present, and when the larceny of the watch was complete, was improperly admitted in evidence.—3 Greenl. Ev. § 94; 1 Roscoe's Crim. Ev. 85–6; 2 Russell on Crimes, 697–8; State v. George, 7 Ired. 321; State v. Dean, 13 Ired. 63; State v. Simons, 4 Strob. 266; Williamson v. Commonwealth, 4 Grattan, 547.

5. The declarations of the prisoner, on the preliminary trial, and in the jail, were wholly irrelevant, and were only calculated to mislead and prejudice the jury.

M. A. BALDWIN, Attorney-General, contra, cited the following authorities: Johnson v. The State, 29 Ala. 65; Lawson and Swinney v. The State, 20 Ala. 65; Waterman's Archbold on Cr. Pl., vol. 3, p. 619.

RICE, C. J.—In misdemeanors, there are no accessories, either before or after the fact; but all persons concerned therein, if guilty at all, are principals, and may be indicted, tried and punished as principals.—4 Bla. Com. 36. By section 3256 of the Code, the distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission

of a felony, whether they directly commit the act consituting the offense, or aid or abet in its commission, though not present, must (as in the case of misdemeanors) be indicted, tried, and punished as principals.

It is a rule of the common law, that if several persons conspire to do an unlawful act,—an act *malum in se*—all the members of such illegal combination are responsible for the acts of each, done in prosecution of their common purpose.—Frank v. The State, 27 Ala. 37.

It follows from what we have above said, that if two persons conspire to steal the goods of another, and to divide them between themselves as soon as they could conveniently do so; and, in the prosecution of their common purpose, the goods are stolen by the hands of one of them, both are guilty, and may be indicted, tried and punished as principals.

On the trial of the person by whose hands the goods were not stolen, if evidence be first introduced sufficient to justify the court in the conclusion that such a conspiracy, as that last above mentioned, did exist between him and the person by whose hands the goods were stolen, then the acts done, and declarations made by the latter, while *the conspiracy was pending, and in furtherance of the design*, are admissible in evidence against the former, although those declarations were made, and those acts done, at different times, and when the conspirators were several miles apart. The principle on which such acts and declarations are admissible, as stated by Mr. Greenleaf, is, that by the act of conspiring together, the conspirators have jointly assumed to themselves, as a body, the attribute of individuality, so far as regards the prosecution of the common design; thus rendering whatever is done or said, *in furtherance of that design*, as part of the *res gestæ*, and therefore the act of all.—3 Greenleaf on Evidence, (3d edition,) §§ 93, 94.

A conspiracy is seldom proved expressly. The evidence in proof of it is almost always *circumstantial*. If it be proved that the persons who are supposed to have conspired, "were intimate with each other; that they held private consultations; that they pursued by their acts the

same object, often by the same means, one performing one part, and another another part of the same, so as to complete it, with a view to the attainment of that same object, (the court as well as) the jury will be justified in the conclusion, that they were engaged in a conspiracy to effect that object."—3 Greenlf. on Ev. § 93; 3 Waterman's Archb. Cr. Pl. 619, and notes; Rex v. Brisac, 4 East, 171.

The two conversations between the plaintiff in error and West, were clearly admissible in evidence.—Liles v. The State, at the last term; Spencer v. The State, 20 Ala. 24; Seaborn v. The State, ib. 18; Mattocks v. Layman, 16 Vt. Rep. 118. And we now proceed to inquire whether the court below committed a reversible error in admitting the evidence as to the payment of "double toll" by West at the bridge at Centreville. No such error was committed, if that evidence is shown to have become admissible at a stage of the trial subsequent to its actual admission, although it was not strictly admissible at the time of its actual admission.—Lawson v. The State, 20 Ala. 65; Brister v. The State, 26 Ala. 107.

The strongest argument for the plaintiff in error, against admitting as evidence against him the payment of the double toll by West, is, that the payment was made after the larceny of the watch was, in legal contemplation, complete as to West. But that argument, as well as every other urged by the plaintiff in error, can be satisfactorily answered. Conceding that the payment of the double toll was made after West had done enough to authorize his conviction for the larceny of the watch, yet there is evidence which conduces strongly to show, that it was made *"while the conspiracy was pending,* and in furtherance of the common design."  The evidence justifies the conclusion, that the conspiracy between West and the plantiff in error was not confined to the mere felonious taking and carrying away of the watch, but extended to a division of the profits of the larceny, at a meeting to be held between them at another place, as soon as convenient. Having given to their conspiracy that extent, neither of them, when indicted, has the right to call upon the court to

diminish its extent, for the purpose of relieving him from any of its consequences.

On the trial of the plaintiff in error, the State had the right to prove that he was intimate with West; that they came together to the place where the watch was stolen; that they held private consultations at or about that time; that by their acts they pursued the same object, by similar or different means, one performing one part, and the other another part of the same, so as to complete it, with a view to the attainment of that same object; that immediately after the loss of the watch was discovered by the prosecutor, and after the flight of West, the plaintiff in error *knew* that West was making his way to Randolph with the watch; and that the toll bridge, where the payment of double toll was made, was on the direct road from Scottville, where the watch was stolen, to Randolph.— And after all this proof had been made, and the conspiracy above named shown, there was no error in allowing the State to prove that West, in his flight with the watch, paid double toll at the bridge. It is not usual for men to pay double toll. It is plain from the evidence that West did not make the payment for the purpose of implicating the plaintiff in error, or injuring him in any way. Why did he make the payment? Was it not made in pursuance of the conspiracy between them,—in furtherance of it? The payment itself would not prove why it was made. But, as the other evidence tended strongly to show that it was made while the conspiracy was pending, and in furtherance of the common design; and as a previous conspiracy may be inferred from *subsequent* acts; and as any circumstance, which legally tends to corroborate other evidence already legally introduced, is admissible, we cannot hold, that the court below erred in allowing the fact of the payment, under all the circumstances, to go to the jury.—Thompson v. The State, 25 Ala. 41; Stewart v. The State, 26 Ala. 44; Johnson v. The State, 29 Ala. 62; State v. Haney, 2 Dev. & Batt. 395; State v. Cheek, 13 Iredell's Rep. 114.

There is no error, and the judgment of the court below is affirmed.