ALBANY,
Oct. 1834.

Phœnix Fire
Ins. Co.
v.
Philip.

Judgment for plaintiff.

---

The Phœnix Fire Insurance Company *vs.* Philip.

Where a plaintiff, in an action on a *fire policy*, for the purpose of showing the value of the property lost, introduced in evidence *accounts of stock in trade*, purporting to have been taken in several consecutive years, and the insurers offered to prove by persons of *skill in hand-writing* that the accounts of stock *appeared* to have been made at one and at the same time, *it was held* that such evidence was improper, and was accordingly rejected.
So *it was held* that it was not competent for the insurers to prove the amount of stock of the largest dealer in the trade in which the assured belonged, in the city where he resided, for the purpose of raising the presumption of fraud in the *account of loss* furnished by the assured.

Error from the superior court of the city of New York. This was an action on a fire policy on the stock of merchandise and materials of the plaintiff, a *hair-worker*, and on his shop fixtures, and furniture, useful and ornamental, and on his wearing apparel contained in a two story frame building situate in N. York. The amount insured was $12,000, the policy bore date 1st *May*, 1828, and the insurance was for one year. On 9th *December*, 1828, the building in which the property was took fire, and the property insured was burnt, destroyed and damaged, so that the plaintiff claimed $11,099,$\frac{56}{100}$. To prove the value of the property lost, the plaintiff produced an *account of stock* taken on the 1st *October*, 1828, amounting to $12,656, entered in a book kept by him in his shop.    In the same book there was an account of stock under date of 1st January, 1828, amounting to $10,320,$\frac{38}{100}$; another of the date of 1st January, 1827, amounting to $11,214,$\frac{25}{100}$; another of 1st January, 1826, amounting to $7,169,$\frac{50}{100}$; and another of 1st January, 1825, amounting to $2,723,$\frac{50}{100}$. A female, in the employment of the plaintiff, testified that she was present when the account of stock was taken in *January,*

ALBANY,
Oct. 1834.

Phœnix Fire
Ins. Co.
v.
Philip.

and also when the account was taked in *October*, 1828; she did not assist in the taking of the accounts, but saw the plaintiff count the articles, and knew the inventories to be correct, from her knowledge of the contents of the store. A witness for the defendants, who had examined the *accounts of stock* contained in the book produced by the plaintiff, was asked as a person of *skill in hand-writing* whether it was not his opinion, from a careful examination of the accounts, that the *whole were written at one and the same time*, which question was objected to by the counsel for the plaintiff, who offered that the book might be taken out by the jury, and the judge who presided at the trial overruled the question. The counsel for the defendants offered to prove by the same witness, and by a number of other witnesses, that the inventories appeared to have been made at one and at the same time, but the evidence thus offered was rejected by the judge. The counsel for the defendants also asked a *hair-worker*, extensively engaged in the business, what was the amount of stock of the largest dealer in hair in the city; which question was objected to by the plaintiff's counsel, and overruled by the judge. To which several decissions, the counsel for the defendants excepted. The jury found a verdict for the plaintiff for $10,-344,$\frac{55}{100}$, damages, and six cents costs. On which judgment was rendered. The defendants sued out a writ of error.

*S. A. Foot*, for plaintiffs in error.

*M. T. Raynolds*, for defendant in error.

*By the Court*, SAVAGE, Ch. J. Witnesses *skilled in hand-writing* have been received to prove whether, in their opinion, certain instruments were written in a natural or an imitated character, and of course to prove whether they were genuine or forged. This species of evidence differs very little, if at all, from proof of comparison of hand-writing, which is inadmissible. The comparison of hands which is inadmissible, is that arising from the juxta-position of two writings, in order to ascertain whether both were written by the same person—and this is not admitted; but the witness is permitted to give his

opinion whether the paper produced is written in a natural character, and therefore genuine. In both cases the witness is supposed to have no knowledge of the hand-writing of the person whose signature is to be proved; he cannot form his opinion from comparing the signature in question with one admitted to be genuine, but he may form his opinoin without any thing to inspect but the signature to be proved. If the latter is stronger evidence than the former, I have never been able to perceive it. They are neither to be relied on with much confidence. The danger of relying on witnesses of *skill in hand-writing* was very strongly presented to this court in the case of *Poucher* v. *Livingston*, decided three or four years ago. In that case gentlemen of the first respectability, and as well qualified as any in community, made great mistakes. The question before the jury was the genuineness of a signature to a promissory note. A number of signatures were presented—some true and some false; some of the false were selected as genuine, and some of the true signatures were considered spurious. In that case a great effort was made with this kind of testimony, and the result proved that in that instance it was utterly worthless. In *Goodtitle, ex dem. Renett,* v. *Braham,* 4 *T. R.* 497, Lord Kenyon admitted clerks from the post-office, whose duty it was to inspect franks, to give their opinion whether the signature to a will was genuine or a forgery, by stating whether it was written in a *natural* or an *imitated* hand. They swore it was imitated; but, on being shown other signatures of the testatrix, known to be genuine, one of them was declared by one of the witnesses to be genuine, and by the other to be imitated. In a subsequent case of *Cary* v. *Pitt,* before the same learned judge, similar evidence was offered by a clerk in the post-office. Lord Kenyon said it could not be received; that though such evidence had been received in *Renett* v. *Braham,* he had, in his charge to the jury, laid no stress upon it. *Peake's Ev. app.* 176. In the case of *Gurney* v. *Langlands,* 5 *Barn. & Ald.* 330, this question was put: " From your knowledge of hand-writing, do you believe the hand-writing in question to be a genuine signature, or an imitation ?" The question was objected to and rejected. On a motion for a new trial, Abbot, Ch. J.

ALBANY,
Oct. 1834.

Phœnix Fire
Ins. Co.
v.
Philip,

said that he had long been of opinion that evidence of this description, whether in strictness receivable or not, ought, if received, to have no great weight given to it. Bayley concurred. Holroyd had great doubt whether this was legal evidence, but was clear that it was entitled to no weight. Best, J. said, "It is impossible for any person to speak to handwriting being an imitation, unless he has seen the original—a new trial was denied. These cases do not decide the question now before the court, but are somewhat analogous. The question now before the court and jury was, whether the *accounts of stock* were made *bona fide* at the times they purport to bear date. It was not doubted but they were in the handwriting of the plaintiff, but simply whether they were written at the times when they bore date. The books were before the court and jury ; the opinions of witnesses were worth no more than the individual opinions of the jurors themselves, and would be very loose testimony upon which to convict a man of fraud and false swearing.

The evidence offered as to the amount of stock in the plaintiff's shop was equally loose and unsatisfactory. It was the mere opinion of others that other dealers in the same articles had much less stock, and hence the jury were to infer that the plaintiff had been guilty of a fraud. Fraud is not to be proved by surmises or suspicions.

I think the superior court decided correctly, and their judgment should be affirmed.

Judgment affirmed.