## EDGAR *vs.* McARN.

1. When a bankrupt's certificate is attacked on an allegation of fraud in withholding moneys in his hands, after the defendant has introduced evidence to show that the business in which he was engaged for several years prior to the filing of his petition in bankruptcy, was generally disastrous to those engaged in it at the same time, evidence of the amount of losses sustained by another individual, wholly disconnected from him, is not admissible evidence for the defendant.

2. But after plaintiffs have proved that defendant had received considerable sums of money before filing his petition, that he was engaged in merchandizing, and had purchased cotton, &c., defendant may repel any inference which might be drawn from this evidence prejudicial to him, by showing that all those who were engaged in the purchase of cotton at the same time and place with himself, had failed; and this, notwithstanding it is shown that he sold his goods for cash, while the others had sold on a credit.

3. So also, evidence that defendant was a reckless cotton buyer is admissible for him.

4. When plaintiffs have proved that defendant purchased cotton to a very large amount during the three years immediately preceding the trial, which was several years after obtaining his discharge in bankruptcy, defendant cannot rebut this evidence by showing that nine-tenths of those engaged in that business during the same time were insolvent.

5. Nor can he be allowed to prove that merchants in a neighboring city were in the habit of employing persons in the city where he lived to buy cotton for them on commission.

6. When a letter or account current is attached to the deposition of a witness in answer to a cross-interrogatory, if the party calling for them declines to read them, the opposite party may read them in evidence to the jury.

7. After the evidence is closed, it is discretionary with the court to allow additional evidence to be submitted to the jury, if the justice of the case requires it; and its discretion is not revisable on error.

8. Where a party advertises as surviving partner on the advice of his attorney, his statement to the attorney, though not evidence of the facts themselves, may be received in evidence, in connection with the advice given, as showing the grounds on which it was based, and as explanatory of the advertisement.

9. A charge is erroneous which withdraws from the jury any facts, however weak, which tend to establish the point in issue.

ERROR to the Circuit Court of Montgomery.

Tried before the Hon. JOHN GILL SHORTER.

This was an action of DEBT by the plaintiffs in error, to recover of McArn the amount of a judgment which they had obtained against him in the Circuit Court of Montgomery county, for the sum of $1965. The defendant pleaded his discharge in bankruptcy, in bar of the suit. The plaintiffs replied, that the defendant, at the time of filing his petition for his discharge in bankruptcy, had a large sum of money in his hands, to-wit: ten thousand dollars, which he did not render in his schedule, but willfully and fraudulently withheld and concealed the same; and upon this replication issue was joined, on which there was a verdict and judgment for the defendant.

Upon the trial of the cause, a bill of exceptions was sealed by the presiding judge, by which it appears, that the plaintiff, after having introduced the exemplification of the record from the Montgomery Circuit Court, showing the judgment sued upon, introduced a transcript of the proceedings had in the District Court of the United States for the Northern District of the State of Mississippi, in the case of Malcolm McArn against his creditors, which showed that said McArn's appli

cation for a discharge under the law was made on the 24th day of February, 1842, and that the decree declaring him a bankrupt, and ordering a certificate of final discharge to issue to him, was rendered on the 12th day of July, 1842.

The plaintiffs further offered evidence conducing to prove, that the persons named in the petition, or the schedule attached to it, as creditors of the bankrupt residing in the city of New York, were wholesale or jobbing merchants in different lines of business, and that defendant had dealt with them for goods in the years 1836, 1837 and 1838; and that from 1835 to 1838 defendant was a merchant, residing and doing business in the city of Montgomery, Alabama; that he sold for cash, except to particular individuals to whom he allowed credit, keeping a memorandum of their purchases; that he was a skillful merchant, and the nett profits on such business during those years at Montgomery, were about 20 per cent. upon the original costs of the goods. There was also proof that defendant had bought goods in 1837 and 1838 from others, to the value of about $6,000, and which he had never paid for; the proof further conduced to show, that the defendant, in the same years, (1837 and '38) had received from other sources, besides the sales of the goods above mentioned, about $20,000 in cash, and a lot of cotton bought by him from one Mosely and not paid for. There was evidence also showing that, immediately after the execution of the assignment mentioned in the schedule attached to the defendant's petition, and which was dated the 26th of November, 1838, the defendant was seen to buy and sell uncurrent money in Montgomery, and afterwards to buy some in Mobile; and that in May, 1840, he established a store in Columbus, Mississippi, which he kept up until the summer or fall of 1842, for the sale of groceries; that he sold there a large amount of goods, for cash, and made no bad debts; the proof, however, preponderated in favor of the defendant's having carried on this last named business upon commission.

It appears that the last item in the defendant's schedule of debts was a bill of exchange, for the sum of $1300, accepted by Holcombe, Bro. & Co., as for their use, but was really for the use of the defendant, who received the money, and bought groceries with it for his establishment in Columbus.

There was evidence that the defendant, in the fall of 1842, opened a store in Montgomery, under the sign of John Mc-Arn, and kept it for several years; that said John McArn had never been in Montgomery while the said store was kept up; that said Malcolm rented the house, hired the clerks, conducted and controlled the business, and seemed to do a considerable amount of it; that, in 1845, said Malcolm sent several thousand dollars' worth of those goods to Wetumpka, where he rented a store, and employed an additional clerk, and sold them.

On the part of the defendant, evidence was offered conducing to prove, that in 1835-6, 1836-7, 1837-8, he had bought cotton freely, say from four to five thousand bales each year; but there was no evidence of any particular purchases, except 70 bales of one Gunter in 1837, 100 bales of one Hayne in 1838, the same amount of one Brevard during the latter year, and the crops of Brumby and Mills; but the number of bales was not shown. The prices at which the defendant bought and sold cotton were not shown.

1. In connection with proof of the general fatality of the cotton business during those years, the defendant asked a witness, "Did you not lose largely on cotton during these years?" The witness answered that he had lost $50,000 during those years. This question, and the proof elicited by it, were objected to, but allowed by the court, and the plaintiffs excepted.

2. Defendant asked the same witness this question: "Did not nearly all who bought cotton in Montgomery in the years 1835-6-7-8 fail?" This was objected to by plaintiffs, as seeking irrelevant and incompetent testimony, being the results of the conduct and management of others not shown to have been in the same condition with the defendant; but the objection was overruled, and the witness answered, "Yes." The plaintiffs asked the witness, if those merchants who had failed had sold their goods for cash or on credit: he replied, that all had sold on credit, but McArn; and thereupon the plaintiffs moved the court to reject the proof; but the motion was overruled, and they again excepted.

3. Defendant asked a witness who was engaged in buying and selling cotton at the time: "Was not the defendant a reckless cotton buyer?" The witness was allowed to answer,

and say: "He gave more for cotton than I thought justifiable," although he could not say how much either he or defendant did pay for it; and to this plaintiffs excepted.

4. The evidence tended to show, that cotton buyers in the Montgomery market, during the years 1835–6–7–8, kept books showing of whom they bought cotton, the prices at which it was purchased, to whom they sold or consigned, the prices received, and the expenses and charges incident to the same. It was also shown, that the defendant, including the effects mentioned in the assignment embraced in his schedule attached to his petition, had paid out in 1835–6–7–8 about $22,000. Besides this, he had borrowed of the Bank at Montgomery, on bills, the sum of $25,000, which he invested in cotton, but which he had paid. There had been no reclamations upon said defendant for losses on cotton, so far as disclosed by the proof. There was evidence also that, within the three years preceding the trial, the defendant, individually and jointly with others, had purchased cotton amounting in the aggregate cost to about $284,000, raised on bills drawn on New York, and which the evidence tended to show were paid by cotton shipped to New York to meet them. In reply to this, defendant asked a witness: "Are not nine-tenths of the cotton buyers in this town for the last three years insolvent?" The plaintiffs objected to this question, as incompetent and irrelevant; but the objection was overruled. The witness answered in the affirmative, and the plaintiffs excepted.

5th. The defendant asked a witness: "Do not merchants in Mobile get persons here (Montgomery) to buy cotton for them at fifty cents per bale?" The defendant offered no evidence to show that he was so employed. The question was objected to; the objection was overruled; the witness answered in the affirmative, and the plaintiffs excepted.

6. The defendant introduced evidence tending to show that, in the fall of 1842, he made an arrangement with John McArn, a wealthy brother residing in North Carolina, by which the latter should establish a mercantile house in Montgomery, and the defendant to have charge and management of it, receiving as his compensation one half the profits; that in pursuance of said agreement, John sent a stock of goods to

Montgomery in 1842, which he renewed from time to time until 1845, when the said John McArn departed this life. The goods purchased during this series of years amounted to about $50,000. There was no evidence offered showing that John had any interest in the concern at Wetumpka.

The defendant had taken the deposition of one Daniel B. McArn, in answer to interrogatories propounded by him, and which the plaintiffs had crossed, calling on the witness for all the letters of Malcolm McArn written to John in relation to the above business in 1842 and since, as also for exact copies of all accounts kept by John pertaining to said mercantile business in this State. The witness answered, exhibiting several letters as called for, and also an account as demanded. These the plaintiffs declined reading to the jury; the defendant was allowed, however, to read them, and the plaintiffs excepted.

7. After the defendant had closed his testimony, reserving the privilege to examine one Tilley as to his personal expenses in the years 1836-7-8, and after the plaintiffs had gone on to offer an advertisement made in the paper in Montgomery from May, 1845, to September of that year, by the defendant, that, as the surviving co-partner of John McArn, he would continue the business at the old stand, so as to sell off the goods then remaining, and after the court had adjourned until next day, with the understanding that no other proof, except that proposed to be made by Tilley, should be offered by the defendant, the court next morning permitted the defendant to examine Abram Martin, Esq., an attorney at law, who proved that, shortly after the death of John McArn, the defendant had made a statement to him, as to what his interest was in the store, and upon that statement the witness had advised him that he was a co-partner, and had the right as survivor to sell the stock of goods on hand. This proof was offered in explanation of the advertisement proved by plaintiffs, showing that it was made upon legal advice. The evidence of Martin was objected to, both on the ground of the understanding that defendant's testimony had closed, and because it was illegal and irrelevant; but the court admitted it, and the plaintiffs excepted.

8. The defendant proposed to ask the witness, Martin, to

detail the statement made to him, as to his (defendant's) interest in the store, not as evidence of the facts detailed, but as showing the predicate upon which said witness formed the opinion that defendant occupied the relation of surviving co-partner to the concern. This was objected to by the plaintiffs, but allowed. The witness stated, that he did not advise the defendant to make the publication, but merely told him he was a partner, and possessed the powers of a survivor, &c. The plaintiffs thereupon moved to exclude the proof; but the motion was overruled.

9. The plaintiffs asked seven charges, and the defendant five; all of which were given, and to which no exception was saved. The court, however, of its own motion, charged the jury, "that, if the testimony satisfied them that the goods which were found in the possession of Malcolm McArn in 1842, after he had obtained his discharge, were purchased by John McArn, and were his property, and that the cotton that was bought by Malcolm after he obtained his discharge was purchased with money realized from his business, or by money raised by loans or advances made to him to buy cotton, then they must find for the defendant." To this charge the plaintiffs excepted.

The several rulings of the court, as set forth in the bill of exceptions, are assigned for error.

ELMORE & YANCEY, for plaintiffs in error:

Neither the declarations nor acts of those who are mere strangers, and between whom and defendant there was no privity, are admissible in evidence, either for or against him. They are *res inter alios acta*. 1 Starkie on Evidence, 51-2, 1301-2; 1 Greenleaf on Evidence §§ 51, 52, 53, 100, 101. On a case of *quantum meruit*, what a third person charged for similar goods or services is inadmissible. 7 J. J. Marsh. 425. These principles show that the objections on which the second, third, fourth, fifth, eighth and ninth assignments of error are based, were well taken.

The rules of evidence require the best evidence to be adduced which the case admits of; and in this case, the prices at which McArn bought and sold, and his losses, if any, were higher evidence of loss than the failure of others,

who bought and sold at unknown prices. 1 Starkie on Evidence 102, 103.

The question and answer which form the basis of the sixth and seventh assignments of error, called for and elicited the mere opinion of the witness and his conclusions, when such conclusions and opinion were not inferences of skill and judgment; and when, too, they were not accompanied by the facts on which they were founded. Their admission was error. 3 Starkie on Evidence 1736; Johnson v. The State, 17 Ala. 618; Harris v. The State, 16 ib. 776; 1 Greenleaf on Evidence, §§ 54, 55, 128, 130.

Papers called for and produced on notice, if no interrogatories have been had on their contents, cannot be read in evidence by the party producing them, if the party calling for them does not offer them in evidence. Anthon's N. P. 17; The State v. Wisdom, 8 Porter 511; 2 Starkie's Evidence 360; 7 Serg. & R. 10; 1 John. 385; 5 East 548; 1 Esp. 290.

Where papers are produced, in answer to questions or written interrogatories, by a witness, the same rule must govern as if the witness were on the stand. In such case, if an attorney asked the witness, if he were in possession of defendant's letter or account stated, to hand it to him, and the witness should do so, it would hardly be contended that this made the paper evidence. The reasoning of some of the authorities, that, if a party calls for books or letters, they should be considered as evidence when produced and inspected, because otherwise it would be an unfair advantage given, is unsound; for a bill of discovery, or interrogatories under the statute, elicit such evidence, and yet it is optional with the party filing them, to use them or not as he chooses. Such an interrogatory is in the nature of a subpœna *duces tecum*. 18 Ala. 110.

The declarations of McArn to Martin, were offered but for one purpose, viz: to explain the advertisement. Being declarations of defendant, made when plaintiffs were not present, and at a different time from the publication of the advertisement, and not being a part of the *res gestœ*, they were inadmissible for that purpose. These declarations, and Judge Martin's advice to defendant, do not explain the advertisement. McArn's question was not as to advertising, but

simply as to the right of John's administrator to interfere with defendant's possession. They were admissible only to prove good faith or malice, and so repel vindictive damages claimed from the act itself.

A charge is erroneous, which withdraws from the consideration of the jury facts material to plaintiff's right of recovery, and places it on grounds independent of those facts. Nabors v. Camp, 14 Ala. 464; Carlisle v. Hill, 16 ib. 398; Rowland & Heifner v. Ladiga's Heirs, 21 ib. 9; Porter v. Nash, 1 ib. 452; 6 Conn. 453; 7 Dana 506; 3 ib. 66. When there is a conflict in the testimony, a charge upon the facts of the case which assumes the contested fact as proved, invades the province of the jury, and is erroneous. 21 Ala. 218; ib. 731; 1 Gill 262.

If the court, in its charge to the jury, refers to evidence, and comments upon it, it is but right that all the evidence bearing upon the point should be brought to their notice. 1 Watts & Serg. 68; 6 ib. 132; 3 ib. 21; 16 Vermont 579. When the court gives erroneous instructions, the error is not cured because they are accompanied by correct ones. 6 Miss. 37. A charge which admits of two constructions, one of which asserts an incorrect legal proposition, is erroneous. Ross v. Ross, 20 Ala. 105.

The charge given by the court, and excepted to, is also erroneous, because it is based in part upon a hypothesis which is not warranted by the evidence, viz: that the goods in the possession of McArn in 1842, after his discharge, belonged to John McArn. There was no evidence that the goods in Columbus, Mississippi, were purchased by John. The evidence as to these goods was, that the defendant had a store in Columbus, from May, 1840, to the summer or fall of 1842; and there was a conflict of evidence, whether it was carried on on his own account or on commission. 1 Penn. State Rep. 68; 9 Ala. 382; 8 Missouri 733; 3 Dana 66; 2 Gilman 285.

This charge was also objectionable, because it was well calculated to mislead the jury in this: that the defendant may have bought cotton after his discharge, with money which he had when he applied for the benefit of the bankrupt law; yet, if that money was realized from his business, no matter when realized, this fact would be no evidence of fraud. The charge

was too indefinite, in not specifying that the jury must be satisfied, before they could find that matter in favor of McArn, that this money was realized from his business after his application. Cothran v. Moore, 1 Ala. 423.

In none of the charges given by the court, where the evidence was referred to and commented on, was the evidence referred to which tended to show that the defendant dealt in the purchase and sale of uncurrent money; and this is error. 1 Watts & Serg. 68; 6 ib. 132; 3 ib. 21; 16 Ver. 579. The charge given excluded from the jury the fact of defendant's having dealt in uncurrent money, of the money received by him on the Holcombe draft, and of the goods in his possession at Columbus after his discharge. It withdrew from their consideration the fact that McArn bought goods for his own use, and not as the agent of the house for whom he was doing business on commission, with the proceeds of the Holcombe draft for $1300.

N. Harris and E. Y. Fair, *contra:*

Any fact which tends to establish the truth or falsehood of the matter in issue, however slight it may be, is admissible evidence. 1 Greenleaf's Evidence, 92 § 82; ib. 59 § 52; ib. 14 § 11.

The fact that others engaged in the same business, at the same time defendant was, sustained heavy losses in that business or failed, is a circumstance from which the jury may infer that the defendant also sustained heavy losses, and was therefore proper evidence to go to the jury. 5 Barr 230; 2 Cushing 160; 4 Denio 502; 15 Conn. 254. The defendant could not prove his losses on cotton in any other way. His books, if produced, would not have been evidence for him. It was impossible for him to prove the precise amount of his losses.

That nearly all those who were engaged in buying cotton during the years in which defendant bought, failed, was a fact, and not the expression of an opinion. Massey v. Walker, 10 Ala. 290. That defendant "was a reckless cotton buyer," was also the statement of a fact, and not of an opinion. 10 Ala. 290; 5 Barr 230; 19 Ala. 98; 20 ib. 261. But, if it was the mere expression of an opinion, it was given by one

who was engaged in the same business in which defendant was, and who had an opportunity of knowing the qualities of the defendant; it was, therefore, admissible evidence.

The evidence that nine-tenths of the cotton buyers in Montgomery were insolvent, and that merchants in Mobile employed persons here to buy for them at fifty cents per bale, was in reply to testimony offered by plaintiffs, that defendant had, in the last three years, bought cotton to the amount of $284,000, and was intended to show that most of those who bought cotton during those years were men of little or no means, and that persons who were insolvent might be large purchasers of cotton. The evidence that defendant had bought cotton to the amount of $284,000, was itself illegal and improper; and being illegal and improper, no legal injury could result to plaintiffs by the admission of even illegal testimony in reply to it; and when no legal injury has resulted from the admission of illegal evidence, this court will not reverse. Parsons v. Boyd, 20 Ala. 112; Herbert v. Hanrick, 16 ib. 112. The purchase of cotton by defendant in 1850, 1851 and 1852, afforded no presumption of fraud, it not being shown by plaintiffs that he had not then the ability to obtain the means, with which to make the purchases, from other sources. Powell v. Knox, 16 Ala. 369; Petty v. Walker, 8 ib. 383.

The testimony of Daniel McArn in answer to the cross-interrogatories propounded to him by plaintiffs, and the letters and account current furnished by him, being responsive to the interrogatories propounded to him, were admissible evidence for defendant. The plaintiffs had no right to speculate upon the chances of obtaining favorable evidence from the witness, and, after failing to do so, to prevent the defendant from obtaining the benefit of the answers of the witness. 8 East 290.

It was fully within the discretion of the court to permit either party to introduce additional evidence, even after the testimony had been closed. Ivey v. Phifer, 13 Ala. 825.

The opinion given by Judge Martin, when consulted by McArn, was admissible, because it explained an act which the defendant had committed. Easley v. Dye, 14 Ala. 158; Goodgame v. Clifton, 13 ib. 583; 12 ib. 77; 2 Richardson 106.

The charge excepted to by the plaintiffs in error, was an affirmative charge; and this court, in the absence of anything in the record showing the contrary, must presume that there was evidence which justified it. If there was no such evidence, it was incumbent on plaintiffs in error to show it. 19 Ala. 701; 14 ib. 822.

The evidence relied on to sustain the allegation of fraud in obtaining his discharge in bankruptcy by defendant, was: 1. The possession by defendant, in the fall of 1842, of a large stock of goods; 2. That during the years 1850, 1851 and 1852, defendant had purchased cotton to the amount of $284,-000. The testimony of Daniel McArn tended to explain the manner in which the goods were obtained; and the evidence showed that the money with which the cotton was bought, was raised by bills drawn on New York, to meet which the cotton purchased was shipped. There was, therefore, evidence tending to explain both of the facts which were relied on to show fraud in obtaining the discharge; and the charge was, therefore, properly given, because the law never presumes fraud. The legal presumption is, that the certificate was fairly obtained, until the contrary is shown. State v. Kinkle & Lehr, 3 Ala. 352; In re Pearce, 21 Vermont 611.

Both of the facts relied on to show fraud being explained, as shown in the bill of exceptions, the plaintiffs in error have sustained no injury by the admission of the evidence objected to, even if it were irrelevant.

The only issue submitted to the jury was, whether the defendant, at the time of filing his petition for the benefit of the bankrupt act, had money which he fraudulently withheld. There was no assignment of fraud in withholding goods, or any other property; and the plaintiffs had the full benefit of every question that could arise upon the issue submitted to the jury, in the several charges given; and therefore, not being prejudiced, he cannot complain. Donnell v. Jones, 17 Ala. 689; Knapp v. McBride et al., 7 ib. 20; King v. Crocheron, 14 ib. 826.

The case of Rowland & Heifner v. Ladiga's Heirs, 21 Ala. 32, is different from this. In that case, the record did not set out the several charges given, so as to show the fact on which plaintiffs' right of recovery was made to depend. In this

case, the record does show that the charges given distinctly presented every fact and question that could legitimately arise upon the issue before the jury, and the plaintiffs are therefore not injured.

The case of King v. Crocheron, 14 Ala. 822, is an express authority to the point, that a party complaining of error must show affirmatively that he has been injured, either by the admission or exclusion of evidence, or the giving or refusing of a particular charge. This record does not purport to set out all the evidence; and as the charges given fairly present every question and fact that could legitimately be submitted to the jury, this court must presume that the facts which had transpired in evidence before the jury, justified the court in giving the charges.

CHILTON, C. J.—The defendant, doubtless with a view of showing that he had sustained a loss which drove him into bankruptcy, and which swallowed up all the profits that might be supposed to have accrued to him from the business in which the plaintiffs had proved he was engaged, introduced evidence of his having dealt largely in cotton in the years '36, 7 and 8, and showed that such business generally proved disastrous to those engaged in it during these years.

In connection with proof of the general fatality of the business, he asked a witness: "Did you not lose largely on cotton during these years?" The witness replied, that he had lost $50,000; and the legality of this question and answer, forms the first point for our consideration.

Conceding that it was proper for the defendant to encounter the presumption which the plaintiffs may have raised, of funds being in his hands at the time of filing his petition, by showing that he had been engaged in a business which generally resulted in ruin to those who followed it, upon the principle, that what generally happens, according to the laws of trade, to those who pursue a particular business for a given period, may reasonably be supposed to have happened in each particular case, (1 Stark Ev. 55;) yet we are aware of no rule of law, which authorizes any inference to be drawn, as to the profit or loss of one individual, from what another, wholly disconnected from him, may have made or lost while

Edgar v. McArn.

engaged in a similar business.  Concede that the witness lost
$50,000; the conclusion that the defendant lost anything, is
clearly a *non sequitur* from such a predicate.  *Non constat*, the
loss of the witness, by a turn of good fortune, may have re-
sulted in the gain of the defendant.  At all events, particu-
lar losses depend so much upon the want of prudence, man-
agement, skill and foresight of the party, as well as upon
many fortuitous circumstances against which it may be diffi-
cult to provide in the particular case, that what happens to
one furnishes no reasonable inference or presumption that
the same thing occurs to another.

It is a general rule, founded on the clearest principles of
reason and natural justice, that the acts, declarations and
conduct of others, with which the party has no connection,
shall not be given in evidence against him, so as, either di-
rectly or by inference, to affect his interest.  The law con-
siders such matters as *res inter alios acta*, and excludes all
evidence concerning them.  1 Starkie's Ev. 61.  The proof
educed by the question before us, was clearly of this charac-
ter; and as we can readily perceive how it may have preju-
diced the plaintiffs' case, the court committed an error in its
admission.  We have carefully examined the cases to which
we have been referred, and we find nothing in them to shake
our confidence in the correctness of the conclusion we have
attained.  The case of Bradford v. The Roylston Marine and
Fire Insurance Co., 11 Pick. Rep. 162, is the strongest we
have been enabled to find, at all favoring the view insisted
on by the defendant.

That was an action against underwriters, to recover for an
alleged sea damage to bales of blankets, purchased in Great
Britain and shipped to this country.  The defence set up
was, that the blankets were damaged in the manufacture or
packing; and evidence was offered, to show that the injury was
of a peculiar kind, and different from saltwater damage; and
the court allowed the defendants to make proof that other
bales, purchased by others from the same manufacturer, and
imported in the same year by other vessels, were damaged in
the same way.  It is obvious, that the facts of that case read-
ily distinguish it from this; for, in this, the effort is to
prove, by the result from a course of conduct of a stranger
52

for several years in a particular business, that the like result has happened to the defendant, because he was engaged in the same business during the same time; but this, we have shown, is a *non sequitur ;* the result was caused, it may be, by numberless circumstances which were not, and perhaps could not have been detailed to the jury, and which it would be most improbable could apply alike to both; whereas in the case cited, the exact analogy as to the peculiar character of the injury between the bales of blankets shipped by the plaintiff and others, and as to all the circumstances material to the formation of a correct conclusion respecting the nature of the injury, existed as real facts,—"inanimate witnesses,"—open to observation, and from which the jury might reasonably draw an inference that, as the sea water had not occasioned the injury in the one case, it did not in the other.

The conclusion which we have attained is, however, well sustained by the authorities. See 1 Starkie's Ev. 60; Holcombe v. Hewson, 2 Camp. 391; Phœnix Fire In. Co. v. Philip, 13 Wend. 81; Doe v. Sisson 12 East 62–65; Furneaux v. Hutchins, Cowper's Rep. 807; 1 Greenl. Ev. § 52.

2. When the issue involves an inquiry as to an alleged fraud, which cannot usually be shown by direct proof, and at the same time may not be inferred from facts and circumstances not inconsistent with fairness and honesty, the law justly allows great latitude in the admission of indirect and circumstantial proof. So, in this case, the plaintiffs were permitted, in order to raise a presumption that the defendant had funds in hand when he filed his petition which he fraudulently concealed, to show that before that time he had received considerable sums of money, was engaged in merchandizing and had purchased cotton, &c. To repel any inference which the jury might draw from this proof prejudicial to him, and without going into a detailed account of his business transactions for the several years during which the plaintiffs had shown he was employed, the defendant was allowed to prove that all the persons engaged in the purchase of cotton in Montgomery, and at the same time with himself, had failed; and this, notwithstanding it was shown that he had sold his goods for cash, while the others had sold on a credit. In Powell v. Knox, 16 Ala. Rep. 471, we said: "It would often be

most difficult, and sometimes utterly impracticable, for a party to account for all the property he was possessed of years previously; and to impose upon the bankrupt this duty, would be most onerous." Indeed, such an account, were the bankrupt prepared with all the proof, would require more time, in many cases, than the law allows for the trial of all the cases upon the calendar. The rules of evidence, which are adapted to the convenient administration of justice, and which are not so stringent as to require impossibilities, we think, justified the defendant in rebutting, by proof of the disastrous nature of the business in which he was employed, the inference of his having received profit therefrom. It was also permissible as a circumstance, (although by itself but weak,) tending to show that the defendant shared in the common disaster which overtook all those engaged in the cotton business, during the years mentioned, thus requiring the expenditure of the means derived from other sources to make good the demands which accrued against him on account of this. The objection that such testimony amounts only to matter of opinion, cannot be supported. The failure of a party in business, is a matter of fact; the extent of his loss, however, may be a matter of opinion.

3. The defendant had the right to prove the manner in which he conducted his business, as that he was a reckless cotton buyer; for this served to aid the jury in determining whether his business resulted profitably or otherwise; at least, it was a circumstance affording some evidence that his operations resulted unfavorably; since experience teaches us that those who are wanting in prudence and caution in their business transactions, more frequently fail of success than those who possess and exercise those qualities.

4. Without deciding upon the question, whether the proof that the defendant, individually and jointly with another, had bought cotton within the three years next preceding the trial, amounting in the aggregate cost to $284,000, was competent, as affording any reasonable inference that the defendant had moneys which he fraudulently concealed at the time of filing his petition, we are quite clear, that assuming it to be competent, it was not permissible for the defendant to rebut it, by showing that nine-tenths of those engaged in the same busi-

ness were insolvent. Such proof is inadmissible, upon the same principle which we have before stated as applicable to proof of loss by another individual. It does not follow, that, because there are nine agents to one principal, or nine insol-vent to one solvent person, engaged in buying cotton, the defendant is insolvent, or did not buy on his own account. This circumstance, which is doubtless accidental, has no connection whatever with the defendant's condition, and throws no light upon his transactions.

5. The same may be said of the proof that merchants in Mobile employed persons in Montgomery to buy cotton for them at 50 cents per bale. If the defendant was so employed, he could have proved it; but surely it does not follow that, because some were so employed, all, and consequently the defendant, were so engaged.

6. There was no error in admitting the defendant to read the account and letters attached to the deposition of Daniel B. McArn. They were in response to the cross-interrogatories, and it was not for the plaintiffs, after they found the proof would militate against them, to exclude it. After it was regularly taken and filed in court, the defendant acquired an interest in the proof, and he had the clear right to use it, when the plaintiffs declined doing so. These papers form a part of the deposition, and are not like papers merely called for but not offered.

7. There was no error in allowing Judge Martin to be examined, after the defendant had announced that he had closed his testimony. It was entirely competent, nay, it was the duty of the court, if the justice of the case required it, upon the application of the defendant, to allow additional proof, without which the merits of the case might fail of being attained. The court had, and exercised very properly we doubt not, a discretion in the matter, and its action in relation thereto is not subject to be revised on error. Ivey v. Phifer, 13 Ala. R. 821–'5.

8. What the defendant said to Judge Martin, as the predicate for his legal opinion, was not evidence of the facts stated by him, but was properly allowed, in connection with the legal advice, as showing the grounds upon which it was based, and as explanatory of the advertisement. If the advertise-

ment was the result of a mistake, either of law or fact, as to what constituted a partnership, the party should be allowed to show the mistake, and thus avoid the prejudice which might result from it as tending to establish funds in his hands when he applied for a discharge.

9. As to the charge, a few words may suffice. It was objectionable, as withdrawing from the consideration of the jury facts, which, however weak, yet tended to show that the defendant had funds at the time of filing his petition, and making the case turn exclusively upon the inquiry whether the defendant had accounted satisfactorily for the goods and cotton which were found in his possession, and were purchased by him since his discharge. Had there been no evidence, except in relation to these goods and the cotton purchases which are mentioned in the charge, then it would have been most unquestionably correct; but there was proof of previous dealings in Montgomery and Mississippi; and although the proof may have been slight, yet it was not competent for the court virtually to say to the jury, "You must disregard this, if certain other facts occurring after the discharge are established." True, the judge had previously charged upon the other facts, at the request of the counsel; but taking these charges into the account, we do not think the error is cured. The jury might well have inferred, that, if they found the facts embraced by the last charge in favor of the defendant, their inquiry should terminate; as the court had said to them that, if the goods possessed by Malcolm since his discharge belonged to John McArn, or the cotton was purchased by him with funds realized from his business since his discharge, or with capital borrowed, &c., then they must find for the defendant.

It is unnecessary for us to go farther, and lay down any rules for the future conduct of this cause. What was said in Petty v. J. B. & D. Walker, 8 Ala. Rep. 379, and Powell v. Knox, 16 ib. 364, sufficiently explain the principles of law applicable to it, and render it unnecessary that we should say more.

Let the judgment be reversed, and the cause remanded.