## M. Tooney *v.* The State.

1. **Jury Law — Bias.** — One is not a competent juror who, when empanelled, entertains such an opinion respecting the guilt or innocence of the accused as will influence his verdict.

2. **Same on Appeal.** — A conviction will not be set aside on appeal because a challenge for bias was erroneously overruled, unless the defendant's peremptory challenges were exhausted when the juror was forced upon him. This court will not revise the rulings of the court below in empanelling the jury, when it does not appear that the defendant was deprived of a fair and impartial jury.

3. **Evidence — Hearsay.** — In a trial for murder by poisoning, a witness for the State having testified that he found the deceased, the day before he died, prostrated and helpless behind a saloon and gambling-house with which the defendant was connected, the State inquired what was then said by the deceased as to how he came there. The defence objected, on the ground that any such statement of the deceased could be but hearsay. The objection was overruled, and the witness answered that the deceased stated that he was not drunk, but had been drugged and dragged there. *Held*, that the statement of the deceased, made under such circumstances, was admissible as *res gestœ*, and as showing his bodily condition at the time.

4. **Same.** — In the same connection, the State inquired what was the defendant's business when the deceased was so found; to which the defendant objected for irrelevancy, and because he had not put his character in issue. The objections were overruled, and the witness answered that the defendant was a " capper and roper-in " (*i.e.*, a drummer) for the gambling-house behind which the deceased was found. *Held*, that the question did not put the defendant's character in issue, and the evidence was admissible. And it was further allowable for the State to prove expressions and conduct of the defendant indicating apprehension on his own account in consequence of the condition of the deceased.

5. CHARGE OF THE COURT. — In a case not dependent on circumstantial evidence in a controlling or definite degree, it was not material error to refuse an instruction on the requisite conclusiveness of that species of proof.

APPEAL from the District Court of Tarrant. Tried below before the Hon. A. J. HOOD.

In 5 Texas Ct. App. 163, will be found a report of this case on a former appeal, and a detailed statement of the material facts. The judgment of conviction was then reversed on account of error in the charge to the jury, and the case was remanded for a new trial, which has resulted in the second conviction of the appellant for murder in the first degree, and in the reappearance here of the cause on appeal. The matters of fact involved in the rulings now made are fully disclosed in the opinion. The testimony at the last trial appears to have been more full and explicit than on the first, but in view of the present rulings no practical purpose would be subserved by a recapitulation of it. On his first trial, the appellant was adjudged to suffer death; but on the last, the jury gave him the benefit of the amelioration allowed by the Revised Penal Code, and assessed his punishment at a life-term in the penitentiary.

*John T. Brown* and *Robert McCart*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. This appeal is from a second judgment of conviction of murder in the first degree, on an indictment which charges the appellant with the murder, by poison, of one W. P. Barton, averred to have been administered on October 13, 1877, and from which death resulted on the day following. The first judgment of conviction was reversed and the cause was remanded. 5 Texas Ct. App. 163. On the second trial, the defendant was again convicted of murder in the first degree, and his punishment assessed at confinement in the State penitentiary for life; and his

motion for a new trial having been overruled, this appeal is prosecuted and the case is before us for the second time, and on an assignment of errors which questions, *first*, the correctness of the action of the court below in forming the jury for the trial of the accused; *secondly*, several rulings of the court upon the evidence, embracing the second, third, and fourth errors assigned; *third*, supposed error in certain specified portions of the general charge of the court, and the refusal of the court to give to the jury certain special instructions asked by the defendant's counsel; and *fourth*, the overruling of the motion for a new trial.

1. It is shown by bill of exceptions that one J. N. Williams, who was presented as a juror, having been examined touching his qualifications as a juror in the case and been pronounced a competent juror, and counsel representing the State having accepted the juror, counsel for the defendant, being required to pass upon him, asked the proffered juror, among other questions, if he had any opinion one way or the other about the case; to which he answered that he had, but that he had never heard any of the evidence, or talked with any witness in the case, and that what opinion he had in the case was from mere rumor. He was then asked by the defendant's counsel if it would not take evidence to change his opinion, to which he answered that it would; and thereupon counsel for defendant submitted to the court that the juror should stand aside for cause. Before making a ruling, the court examined him further, asking him the statutory questions, to wit: "Have you a bias or prejudice in favor of or against the defendant?" To which he answered, "I have not. I have no bias or prejudice in the case, one way or another." "Is there, from hearsay or otherwise, established in your mind such a conclusion as to the guilt or innocence of the defendant as will influence your action in finding a verdict?" To which he answered, "I have no such conclusion in my mind." The court again asked the juror whether he had any

opinion or conclusion in his mind that would in any way, in his opinion, influence his verdict; to which he answered, that he could give the defendant a fair and impartial trial, and be governed in his verdict by the law and the evidence. Upon this further examination, the court still held that he was competent, and by the ruling the defendant was compelled to resort to a peremptory challenge in order to avoid the man Williams as a juror. The bill recites that thereafter the same proceedings were had in regard to eight other persons offered as jurors, each of whom the defendant, being required to pass upon each one, challenged peremptorily. The bill further recites that when the defendant had exhausted his challenges, but eleven jurors had been selected, and for the want of lawful right to challenge, he was forced to accept one Orrick, who, upon full examination, had been by the court declared to be a competent juror, and had been accepted by the State.

Under the circumstances disclosed in this bill of exceptions, the proffered jurors, Williams and the eight other jurors, were competent jurors, and the court did not err in refusing to sustain the challenge for cause. The question to be determined was, Did the proffered jurors, at the time they were proposed and when the jury was being formed, entertain then any such opinion as would influence their action in finding a verdict? The man Williams and the others each demonstrated, to our minds conclusively, that they entertained no such established conclusion as rendered them otherwise than impartial, nor in fact any other established conclusion concerning the case. The question is altogether different from the one decided in *Rothschild's Case*, 7 Texas Ct. App. 519, cited by counsel for appellant. In that case the proffered juror, Saunders, by his extended examination, showed clearly, not merely that he had at some time in the past entertained an opinion as to the guilt of the defendant, but that at the very time he came forward and was taken on the jury he then had an established opinion on the subject,

and carried that opinion with him into the jury-box, and the defendant could not get rid of him by a peremptory challenge, for the good reason that he had previously exhausted the number of peremptory challenges allowed him by law.

In order to settle some diversity of opinion on the subject of competent jurors for the trial of a capital felony, which diversity is more seeming than real, we may be indulged in the remark that the opinion in Rothschild's case will be found not only not in conflict with other decisions of this court and of the Supreme Court, but will, on examination, be found to be in harmony with, and supported to a greater or less extent by, the very decisions contrasted with it in the minds of those who have never taken the trouble to investigate the several cases. The same objection was raised to one of the jurors in the case of *Sam Myers* v. *The State*, 7 Texas Ct. App. 640, as that in Rothschild's; but in Myers's case he had not exhausted his peremptory challenges, and by that means he was enabled to and did free himself from the objectionable juror, whereas in the other case the defendant could not by this means get rid of the juror, because, as before stated, he had already exhausted his peremptory challenges. We hold on this subject: *First,* That one who is shown to entertain such an opinion as to the guilt or innocence of the person to be tried, as would influence his action in finding a verdict in the case, and which opinion is entertained at the time he is proposed, is not a competent juror; and of this the judge who presides at the trial is to determine in the first instance. *Second,* That, whether there be error or not in his rulings, they will not be revised on appeal unless it be made to appear that by such rulings the accused has been deprived of a fair and impartial jury by which to be tried. *Third,* That a judgment will not be reversed on appeal so long as the accused had an opportunity to protect himself against an objectionable juror by means of a peremptory challenge, even though the judge below had erred in overruling a challenge for cause.

*Grissom* v. *The State*, decided at the late Galveston term, *ante*, p. 386.

So in the present case, even if in our opinion the court had in fact erred in overruling the challenge for cause of the proffered jurors, Williams and others, still such error would be no cause for the reversal of the judgment, for the reason that they, being peremptorily challenged, did not form any part of the jury by whom the verdict was rendered, and because it is not shown that the juror Orrick, who was placed on the jury after the defendant's peremptory challenges had been exhausted, was not a fair and impartial juror, or that because of his presence on the jury the trial was not fair and impartial as to both the State and the defendant.

2. Bills of exception show, first, that whilst the State's witness Thomas was on the stand, and after he had testified at some length, he was asked by the State's counsel what was said by the deceased, at the time he was found by the witness, as to how he came to be there; to which question and the answer thereto the defendant objected, on the ground that it was but hearsay evidence. The court overruled the objection, and permitted the question to be answered. The judge, before signing the bill, added the following: " The foregoing question was not asked till after the witness Thomas had stated that Barton, the deceased, was in his lower extremities paralyzed, lying with his clothes down, helpless, on the same evening he (Barton) was put in jail, being carried there, and found dead next morning; the facts being shown as to Barton's condition as shown by the statement of facts." The testimony objected to will be found in the following extract from the testimony of the witness Thomas as found in the statement of facts, and which, when taken in connection with the *addendum* of the judge to the bill of exceptions, will show its connection and relevancy. The witness, in speaking of the deceased and his condition at the time to which he testifies, says : " From the

back door of the saloon to where deceased was lying, I saw where he had been dragged. The sawdust was on his heels and feet, and the marks made by his heels were in the ground, from where he lay to the back door of the saloon. Scattered along the trail or drag I noticed a little sawdust, particularly where his feet seemed to have been drawn over a rock. This was in an alley in rear of the saloon. Deceased was then apparently drunk; his pants were unbuttoned and partially down, and one of his pockets was turned wrong side out. Deceased said he was not drunk, but had been drugged and dragged out there. Deceased was lying on the ground, helpless; he had no use of his limbs. Policeman Woody and myself had him carried to the calaboose. We examined deceased when we found him, and found nothing on deceased's person when we searched him before putting him in the calaboose. He died in the calaboose that night sometime.'' It will be seen that the only remark made by the deceased, when found in this helpless condition, was the one found in the extract, and made to the officer, that '' deceased said he was not drunk, but had been drugged and dragged out there,'' and it evidently was made in response to the question objected to.

'' There are four classes of declarations which, though usually treated under the head of hearsay, are in truth original evidence: the first class consisting of cases where the *fact* that the declaration was made, and not its truth or falsity, is the point in question; the second including expressions of bodily or mental feelings, when the existence or nature of such feelings is the subject of inquiry; the third consisting of cases of pedigree, and including the declarations of those nearly related to a party whose pedigree is in question; and the fourth embracing all other cases where the declaration offered in evidence may be regarded as part of the *res gestæ*. All these classes are involved in the principles of the last.'' 1 Greenl. on Ev., sect. 123.

A standard author on subjects of this character says:

"Subject to these qualifications and seeming exceptions, the general rule of law rejects all hearsay reports of transactions, whether verbal or written, given by persons not produced as witnesses. The principle of the rule is that such evidence requires credit to be given to statements made by a person who is not subject to the ordinary tests enjoined by the law." 1 Greenl. on Ev., sect. 124.

"It is said, further, that the affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each one owes its birth to some preceding circumstance, and in its turn becomes the prolific parent of others ; and each, during its existence, has its inseparable attributes and its kindred facts, materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances constituting parts of the *res gestœ*, may always be shown to the judge along with the principal facts; and their admissibility is always determined by the judge, according to the degree of their relation to that fact, and in the exercise of his sound discretion. * * * The principal points of attention are whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character." 1 Greenl. on Ev., sect. 108.

By an application of these rules to the question under consideration, and bearing in mind the fact that the deceased, soon before his death, was found in a helpless condition, and about to be taken to a place of confinement, on the idea that he was in a state of helpless intoxication, we are of opinion that the statement of deceased that he was not drunk, but that he had been drugged and dragged out there, was but a proper vindication of himself, a necessary part of the transaction, and so intimately connected with the main fact — whether the main fact be regarded as the seeming charge of drunkenness, or the greater fact that he had been

poisoned — that it was necessary to a proper understanding of either, and was admissible as being contemporaneous with the main fact under consideration, and was so connected with it as to illustrate its character, and a part of the facts tending to explain his condition when first discovered by the witness, either as part of the *res gestœ*, or as tending to illustrate his bodily condition at the time, which was in some sense involved. *Scott* v. *The State*, 30 Ala. 503; *Cox et al.*, late Galveston term, *ante*, p. 254, and authorities there cited.

In another bill of exceptions it is stated that the county attorney was permitted to ask the same witness, Thomas, what was the business of the defendant at the time of the death of the deceased, and which the witness was permitted to answer, over objection on the ground that the testimony was irrelevant, and because the defendant had not put his character in issue. By reference to the statement of facts, it is found that the witness stated that he "knew the defendant; he is named Michael Tooney, and is sometimes called English Tom. He had been in Fort Worth three or four months before the death of W. P. Barton. He was a professional gambler; he worked around Arch Johnson's saloon as a capper and roper-in. I mean by capper and roper-in, that his occupation was to find countrymen who had money, and induce them to go into the back room of the saloon and gamble."

To our minds, the question and the answer thereto did not, strictly speaking, put in issue the character of the defendant. Had this been done in advance of the subject having been opened by the defendant himself, it would ordinarily have been illegal and improper; but there is a clear and well-defined difference between character and occupation, business, or pursuit. The testimony of the witness was not inadmissible by any rule of evidence with which we are acquainted. In this country every man is permitted to make his own selection as to the business he will follow

and the company he will keep, subject to the law only, and if he is prejudiced by either, he has no one to blame but himself. Men are often judged in public estimation by the business they follow and the company they keep. In the present case the evidence was admissible, by showing his connection with the house and its inmates in which the offence was committed.

Another bill of exceptions recites that after the witness had stated that he was at Arch Johnson's saloon a short time after he had taken the deceased to the calaboose, and when at the saloon had inquired for Tommy Watson, the defendant being present, and that after this the witness had gone to the opposite side of the street, and the defendant followed the witness, and inquired of the witness what he wanted with Watson, and the witness had answered, it is stated that the witness said the defendant made this answer, " I thought you wanted him about that man you put in the calaboose." This was objected to on the ground of irrelevancy, and on the ground of uncertainty as to whom the defendant alluded, and as to the time the defendant was put in the calaboose. The objection was overruled and exception saved.

This objection, when considered with reference to the testimony on the subject of placing the deceased in the calaboose, and that he was the only person placed there at the time, will be seen to be purely technical. If it tended to show that the suspicions of the defendant had been aroused by the inquiry of the witness after the man Watson, then the State was entitled to all it was worth. If it was not admissible, it was wholly unimportant, and the ruling was immaterial. It may be said with reference to these questions upon the evidence, that whilst the questions raised, of themselves, relate to matters which might or might not be of the gravest importance, still, when considered in the light of surrounding circumstances as they existed in fact, their apparent importance becomes comparatively insignificant.

3. After the judge had delivered his general charge to the jury, in which the jury were instructed at length as to their duty under the law of the case as made by the pleadings and the proofs adduced, including the law of accomplices, and the necessity of corroborating their testimony, the presumption of innocence and the reasonable doubt, the defendant's counsel requested the court to give certain special charges to the jury, covering nine different propositions of law, which the court declined to do, giving as a reason therefor that the court was of the opinion that the main charge given to the jury embraced the law proper in the case. There was but one of the refused instructions not sufficiently covered by the general charge. A charge was asked on the subject of circumstantial evidence. Agreeably to the testimony, the case was not dependent alone, nor in a controlling degree upon circumstantial evidence, so as to require a special charge on that subject. It was rather a case dependent upon the testimony of an accomplice, and the necessity of corroborating his testimony, than one dependent upon circumstantial evidence. The general charge properly informed the jury as to the law governing the material issues raised by the evidence adduced, and properly submitted to the jury the question of the guilt or innocence of the accused.

4. After a careful examination of the various grounds of the motion for a new trial, which embrace almost every feature of the trial, and in a prominent way the several subjects hereinbefore discussed, we deem it not important that the several grounds of the motion should be further considered separately. They have all been considered with the care their importance demands, in view of the fact that the imprisonment of the defendant for the period of his natural life depends upon the question. We are not prepared to say that there was any such error in the proceedings as required that the verdict be set aside and a new trial awarded.

Whilst it is apparent to our minds that this appellant was

not the only person who participated in the foul murder of the deceased, it is also apparent that he also was a prominent actor in his taking off by the administration of a deadly poison, as charged in the indictment against him.

Believing that the defendant has had the benefit of a fair and impartial trial, in which his rights have been properly guarded, and that he has been proven guilty of the crime of murder on sufficient evidence, our duty under the law forbids that we should interfere with the verdict of the jury and the judgment of the court. The judgment of the District Court is affirmed.

*Affirmed.*